IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CURTIS HOBBS, | ) | CASE NO. 1:13 CV 1411 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.      Nature of the case and proceedings**

Before me[1] is an action by Curtis Hobbs under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 17. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Hobbs, who was almost 51 years old at the time of the ALJ's decision,[11] lives with his wife,[12] is able to drive,[13] and, despite claims of illiteracy, graduated from high school and attended at least one semester of community college.[14] He was self-employed for four years as a landscaper[15] and also more recently worked as a furniture mover.[16]

The ALJ, whose decision became the final decision of the Commissioner, found that Hobbs had the following severe impairments: low acute back pain, acute lumbar strain; borderline intellectual functioning; and depression.[17]

---

[6] ECF # 12.

[7] ECF # 13 (Hobbs's brief); ECF # 18 (Commissioner's brief).

[8] ECF # 18-1 (Commissioner's charts); ECF # 13 at 7-10 (Hobbs's charts).

[9] ECF # 13 at 1-2 (Hobbs's fact sheet).

[10] ECF # 20.

[11] Transcript ("Tr.") at 21.

[12] *Id.* at 15.

[13] *Id.*

[14] *Id.* at 20.

[15] *Id.*

[16] *Id.* at 21.

[17] *Id.* at 14.

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Hobbs's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he cannot climb ladders, ropes, or scaffolds. He can occasionally climb stairs and ramps. He cannot work around unprotected heights or dangerous machinery. He can occasionally balance, stoop, crouch, and crawl. The work must involve limited reading and writing. He can perform simple routine, repetitive tasks. He can have frequent contact with the public, co-workers, and supervisors. The work must involve limited work quotas or fast paced work. He will be off-task, meaning not focused but still working, 5% of the workday.[18]

With support from the testimony of the vocational expert ("VE"), the ALJ decided that this RFC precluded Hobbs from performing his past relevant work as a furniture worker.[19]

Then, based on an answer to a hypothetical question posed to the VE at the hearing setting forth the RFC finding quoted above, the ALJ further determined that a significant number of jobs existed locally and nationally that Hobbs could perform.[20] The ALJ, therefore, found Hobbs not under a disability.[21]

---

[18] *Id.* at 16.

[19] *Id.* at 21.

[20] *Id.*

[21] *Id.* at 22.

C.     **Issues on judicial review and decision**

Hobbs asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Hobbs presents the following issues for judicial review:

- The ALJ's step three finding is contrary to law because it failed to mention or analyze whether Hobss's borderline intellectual functioning meets or equals Listing 12.05.[22]

- The ALJ's residual functional capacity finding is contrary to law because it fails to apply 20 C.F.R. § 404.1527(d).[23]

- The ALJ's step five determination is contrary to law and/or not based upon substantial evidence.[24]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed and remanded.

## Analysis

A.     **Standards of review**

1.     *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

---

[22] ECF # 13 at 3.

[23] *Id.*

[24] *Id.* at 5.

-4-

Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[25]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[26] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[27]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.      *Listing 12.05***

As the Sixth Circuit recently noted, because "satisfying the listing at the third step yields an automatic determination of disability based on medical findings, rather than

---

[25] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[26] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[27] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

-5-

judgment based on all relevant factors for an individual claimant, the evidentiary standards for a presumptive disability under the listings are more strenuous than for claims that proceed through the entire five step evaluation."[28]

With that in mind, Judge Gwin recently summarized the applicable standard for determining disability under Listing § 12.05C as follows:

> To be rendered disabled under Listing 12.05C, an individual must (1) have a valid IQ score between 60 and 70; (2) suffer from another impairment causing a significant work-related limitation of function; and (3) fit the "diagnostic description"[FN53] – that is, he must exhibit "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested ... before age 22."[FN54] With respect to the requirements of the diagnostic description, a claimant must satisfy three factors: "(1) subaverage intellectual functioning; (2) onset before age twenty-two; (3) and adaptive skills limitations."[FN55] "Adaptive skills limitations" refers to "a claimant's effectiveness in areas such as social skills, communications skills, and daily-living skills."[FN56]
>
> FN53. *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 697–98 (6th Cir. 2007). *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.05; *Foster v. Halter,* 279 F.3d 348, 354-55.
>
> FN54. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.05. *See West,* 240 F. App'x at 697–98; *Foster,* 279 F.3d at 354-55.
>
> FN55. *Hayes v. Comm'r of Soc. Sec.,* 357 F. App'x 672, 674–75 (6th Cir. 2009).
>
> FN56. *Id.* at 677 (citing *Heller v. Doe, 509 U.S. 312, 329, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)* (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 28–29 (3d rev.ed.1987)).[29]

---

[28] *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) (citation omitted).

[29] *Holt v. Comm'r of Soc. Sec.*, No. 1:12-CV-2369, 2013 WL 4748029, at *3 (N.D. Ohio Sept. 4, 2013).

Moreover, Judge O'Malley has developed the analytical standard as to the first prong

– the diagnostic description – in greater depth:

> With respect to the requirements of the introductory paragraph, "a claimant must demonstrate three factors to satisfy the diagnostic description: (1) subaverage intellectual functioning; (2) onset before age twenty-two; (3) and adaptive skills limitations."[FN9] *Hayes, 2009 WL 4906909 at \*2.* The requirements of the introductory paragraph track the definition of mental retardation in the *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Edition ("DSM–IV"), and the Sixth Circuit references the DSM–IV when evaluating disability claims. *Burrell v. Comm'r of Soc. Sec.,* No. 99–4070, 2000 U.S.App. LEXIS 33161, at \*4 (6th Cir. Dec. 8, 2000) (citing Brown, 948 F.2d at 270).

> FN9. "Adaptive skills limitations" refers to "a claimant's effectiveness in areas such as social skills, communications skills, and daily-living skills." *Hayes, 2009 WL 4906909 at \*5* (citing *Heller v. Doe,* 509 U.S. 312, 329, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* 28–29 (3d rev. ed.1987)).

> If the claimant satisfies the diagnostic description of the introductory paragraph, then he must establish both components of sub-section (C): he must have (1) a valid IQ score below 71; and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *See West v. Comm'r of Soc. Sec.,* 240 F. App'x 692, 697–98 (6th Cir. July 5, 2007) (unpublished).

> As the regulation indicates, the two components of sub-section C address the *severity* of the impairment: the Social Security Act recognizes that many individuals with mild mental retardation are still able to work and, accordingly, a claimant who satisfies the diagnostic description must still produce a valid IQ score below 71 *and* demonstrate "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05(C); *see also Muntzert v. Astrue,* 502 F.Supp.2d 1148, 1157–58 (D.Kan.2007) ("DSM–IV and Listing 12.05(C) assume many, if not most, mildly mentally retarded individuals will be able to work. However, they recognize that some mildly mentally retarded individuals may be unable to work where they have 'a physical or other mental

impairment imposing an additional and significant work-related limitation of function.' 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05(C).").[30]

Of particular importance here, *Thomas v. Commissioner of Social Security* also emphasizes that there is "ample Sixth Circuit precedent for the proposition that ... a clinical psychologist's diagnosis of the claimant as outside the definition of 'mental retardation' is an important factor for the ALJ to consider in determining whether the claimant satisfies the introductory paragraph of Listing 12.05C."[31] *Thomas* explained further:

> [S]ignificant reliance [by the ALJ] on a diagnosis of something other than 'mental retardation' such as 'borderline intellectual functioning,' is particularly sensible in light of the fact that the diagnostic description of mental retardation in the introductory paragraph of Listing 12.05 tracks the DSM-IV. Indeed, the DSM-IV is 'one of the leading texts in medicine and, as noted above, it is used extensively by Sixth Circuit courts to evaluate disability claims.[32]

Thus, *Thomas* concluded, while a diagnosis of mental retardation is not a requirement imposed by the introductory paragraph of Listing 12.05C, an ALJ is entitled to give "substantial weight" to the diagnosis of borderline intellectual functioning, not mental retardation, despite the presence in the record of a full-scale IQ score of 70.[33]

---

[30] *Thomas v. Comm'r of Soc. Sec.*, No. 08-CV-1365, 2010 WL 1254788, at *8 (N.D. Ohio March 25, 2010).

[31] *Id.*, at *11 (citations omitted).

[32] *Id.* (citations omitted).

[33] *Id.*, at *12.

-8-

Similarly, and also by Judge O'Malley, is the case of *Brooks v. Astrue*,[34] decided just the day before *Thomas*. *Brooks* found, *inter alia*, that a diagnosis of something less severe than mental retardation in a situation where the claimant has an IQ score below 71 is "relevant evidence" as to both (a) whether the diagnostic description was met, and (b) whether the IQ score was valid.[35]

## B.  Application of standards

### 1.  *Preliminary observations on Listing 12.05*

At its core, Hobbs's first argument as to Listing 12.05 goes to whether the ALJ improperly failed at step three to discuss an IQ score below 70 that could have triggered a finding of disability at that level of the sequential evaluation process. In that regard, Hobbs contends that: (1) his score of 68 on the processing speed component of the WAIS-IV IQ test; (2) a score of 66 on the Kuhlman-Anderson IQ test administered to him in high school; and (3) his presence in special education classes while in high school "should have triggered an analysis as to whether [his] IQ meets or equals  § 12.05."[36]

In that regard, I initially note that the very recent Sixth Circuit decision in *Smith-Johnson v. Commissioner of Social Security*[37] confirms Magistrate Judge White's observation

---

[34] *Brooks v. Astrue*, No. 08-CV-2608, 2010 WL 1254323 (N.D. Ohio Mar. 24, 2010).

[35] *Id.*, at *6 (citations omitted).

[36] ECF # 13 at 3.

[37] *Smith-Johnson v. Comm'r of Soc. Sec.*, No. 13-1696, ___ F. App'x ___, 2014 WL 4400999 (6th Cir. Sept. 8, 2014).

in his recent decision in  *Clifton v. Colvin*,[38] that the law of the Sixth Circuit has shifted in its understanding of the seminal case of *Abbott v. Sullivan*.[39] As previously understood, courts construed *Abbott* as holding that, based solely on evidence that the claimant has an IQ score below 70, it was error for an ALJ to fail to consider whether Listing 12.05 was met.[40] From that understanding, many courts in the Circuit and this District, including my own, have concluded that an ALJ's failure to analyze why a claimant with an IQ score under 70 does not meet or equal Listing 12.05 is grounds for a remand.[41] Moreover, this view of *Abbott* meant that consideration of Listing 12.05 was required at the administrative level even if the claimant has not argued a meeting of Listing 12.05 to the ALJ.[42]

But as Magistrate Judge White explained in *Clifton*, this Circuit has "backed away from the position that *Abbott* created a bright-line rule requiring an ALJ to consider Listing 12.05 whenever there is an IQ score under 70."[43] Two decisions of the Sixth Circuit subsequent to *Abbott* but prior to *Smith-Johnson – Foster v. Halter*,[44] and the more recent

---

[38] *Clifton v. Colvin*, No. 1:13CV1895, 2014 WL 2946655 (N.D. Ohio July 1, 2014).

[39] *Abbott v. Sullivan*, 905 F.2d 918 (6th Cir. 1990).

[40] *Id.* at 924-25.

[41] *Clifton*, 2014 WL 2946655, at *9 (citing cases).

[42] *Id.* (citations omitted).

[43] *Id.* (citing *McClellan v. Astrue*, 804 F. Supp. 2d 678, 690-91 (E.D. Tenn. 2011).

[44] *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001).

unreported case of *Sheeks v. Commissioner of Social Security*[45] – clarify the holding in *Abbott* to now be that an ALJ is required to consider Listing 12.05 only where the record raises "'a substantial question as to whether [the claimant] could qualify as disabled'" under that listing.[46]

Smith-Johnson states that a claimant must do more than merely point to evidence from which the ALJ could then find that a substantial question has been raised, but rather the claimant "must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing.[47] Specifically as concerns a qualifying low IQ score, *Smith-Johnson* notes that the diagnostic definition of Listing 12.05C is not satisfied by a single IQ score, which is only part of the overall assessment for mental retardation.[48]

**2.    *The ALJ erred in not analyzing Hobbs's claim under Listing 12.05***

As framed by the court in *McClellan v. Astrue*,[49] the test under Listing 12.05C is as follows:

> [L]isting 12.05C provides that a claimant with a valid IQ score of 60-70 and another impairment causing significant work-related limitations of

---

[45] *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639 (6th Cir. 2013).

[46] *Smith-Johnson*, 2014 WL 4400999, at *6 (quoting *Abbott*, 905 F.2d at 925) (also citing *Sheeks*, 544 F. App'x at 641).

[47] *Id.* (citations omitted).

[48] *Id.*

[49] As noted, Magistrate Judge White found the decision in *McClellan* persuasive, observing in *Abbott* that the Sixth Circuit had "backed away" from a bright-line rule in Listing 12.05 cases. *Clifton*, 2014 WL 2946655, at *9.

-11-

function will be found disabled if she experiences significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22.[50]

*McClellan* then suggests that the reviewing court proceed to review each component of the test listed above to determine if the claimant has raised a "substantial issue" concerning his meeting Listing 12.05.[51]

As preliminary issue, *McClellan* notes that a step two finding of borderline intellectual functioning does not foreclose any review of the claimant meeting Listing 12.05. *McClellan* notes that step two, which is a *de minimis* hurdle designed to screen out totally groundless claims, is "not the stage at which the ALJ should, without comment, make fine distinctions between two impairments, both supported by the record, which differ only in their degree."[52] Thus, where, as here, the claimant has an intellectual impairment that imposes some limitations on his ability to work, the evaluation should not stop at step two, and the ALJ's step two finding here of borderline intellectual functioning[53] is not the end of the process.

As to the first component of the Step Three analysis, it is clear that Hobbs has a qualifying IQ score. As *McClellan* notes, and has long been required by the regulations, where more than one score is derived from an administered test, the lowest WAIS score is

---

[50] *McClellan*, 804 F. Supp. 2d at 691.

[51] *Id.*

[52] *Id.* at 690 (internal quotation omitted).

[53] Tr. at 14.

to be used in conjunction with determining if the claimant meets Listing 12.05.[54] Hobbs's WAIS IV processing speed score of 68 qualifies. The fact that the ALJ noted only the full scale IQ score is not consistent with the requirement to use the lowest score when multiple scores are derived from the same WAIS test.

Further, there is no question that Hobbs suffers from a physical or mental impairment imposing an additional and significant work-related limitation of function. The limitations set out in the RFC here, as well as the finding that Hobbs cannot perform his past relevant work, establish that he has physical and mental impairments that significantly limit his work-related functioning.

Finally, as to the last component of the test – whether the claimant can show that the diagnostic description for Listing 12.05 is met – the case law and regulations hold that this component is itself comprised of three elements: (1) significantly subaverage intellectual functioning; (2) current deficits in adaptive functioning; and (3) onset before age 22.[55] In this case, as will be discussed below, Hobbs has raised a substantial question as to whether he meets the listing.

First, the qualifying low IQ score itself establishes that he has significantly subaverage intellectual functioning. Second, there is substantial evidence that Hobbs suffers from adaptive deficits. The consultative examination by Richard Haas, to which the ALJ gave

_____

[54] *Id.* (citing 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00 at D).

[55] *Id.* at 692.

-13-

"considerable weight,"[56] found Hobbs was moderately impaired in (a) his abilities to maintain attention and concentration in even simple tasks, and (b) relating to others.[57] The State reviewing psychologist, whose report was also given considerable weight by the ALJ, found Hobbs even more limited in adaptive functioning in that he could only adapt to "infrequent or minor changes in a static environment" and could interact only superficially with others.[58]

Finally, Hobbs's presence in special education classes for most of his school years, as well as a score of 66 on the Kuhlman-Anderson Intelligence test in school, all serve, as *McClellan* notes, to "easily support the conclusion that [Hobbs's intellectual] deficits are longstanding."[59]

---

[56] Tr. at 19.

[57] *Id.*

[58] *Id.* at 20. *McClellan* has an extensive discussion on how serious adaptive deficits must be to meet the listing. In that discussion, *McClellan* notes that showing that an impairment is not severe enough to meet the "B" listing in connection with Listings 12.02 and 12.04 does not preclude a claimant from meeting Listing 12.05C. *McClellan*, 804 F. Supp. 2d at 694-95. *McClellan* determined that finding a claimant can understand, remember and attend to "non-complex" tasks, and even interact with co-workers, is not inconsistent with meeting Listing 12.05. And any findings made by an ALJ as to adaptive deficits in connection with the B criteria of Listings 12.02 and 12.04 "would not have precluded [claimant] from meeting Listing 12.05." In this case, as in *McClellan*, the ALJ's sole examination of adaptive functioning was in connection with Listings 12.02 and 12.04. Tr. at 15. For the reasons extensively discussed in *McClellan*, this was not sufficient to preclude Hobbs from meeting Listing 12.05C.

[59] *McClellan*, 804 F. Supp. 2d at 693 (citing *Mental Disorders*, 65 Fed. Reg. at 50772). I also note that although the IQ score cited here is not a WAIS score, the regulations provide for methods of converting scores obtained by another test to WAIS numbers. *See*, *Abbott*, 905 F.2d at 924-25.

-14-

Moreover, as *McClellan* also stated, even if there were conflicting evidence as to whether Hobbs met each element of the standard, the evidence cited above establishes that he raised a "substantial question" as to his meeting the listing.[60] By raising such a substantial question, *McClellan* concluded, "under *Abbott*, the ALJ was obligated to consider listing 12.05."[61]

Thus, because the relevant inquiry is whether Hobbs raised a "substantial question" as to his qualifying under Listing 12.05, for the reasons stated above, I find that the ALJ erred in not considering Listing 12.05, and that a remand is necessary. Further, this disposition of the first issue raised for judicial review means that there is no need to proceed with adjudicating the remaining questions.

## Conclusion

For the reasons stated, this matter should be remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: September 12, 2014                    s/ William H. Baughman, Jr.
                                             United States Magistrate Judge

---

[60] *Id.*

[61] *Id.*

-15-